**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RYAN L. APRILL, an individual, and THOMAS S. APRILL, an individual, | |
| Plaintiffs, | |
| vs. | |
| ANTHONY AQUILA, AQUILA FAMILY VENTURES, LLC, AFV FOUNDERS SELECT CAPITAL PARTNERS LLC, a/k/a AFV PARTNERS LLC, AFV MANAGEMENT ADVISORS LLC, AND AFV FSCP CO-INVESTMENT I LLC, a/k/a AFV PARTNERS CO-INVESTMENT I LLC, | Case No. 20 cv 04657 <br><br> Hon. Martha M. Pacold |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS PURSUANT TO RULE 12(B)(3),
12(B)(6) AND 9(B) AND MOTION TO STRIKE PURSUANT TO 12(F)**

Dated: November 10, 2020

Peter A. Silverman (ARDC No. 6196081)
Michael K. Desmond (ARDC No. 6208809)
Mattison D. Enloe (ARDC No. 6329648)
FIGLIULO & SILVERMAN, P.C.
10 South LaSalle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-4600
psilverman@fslegal.com
mdesmond@fslegal.com
menloe@fslegal.com

*Attorneys for Plaintiffs*

## Table of Contents

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT .........................................................................................................................3

I.     Defendants Have Failed To Meet Their Burden of Establishing The Existence of a Valid Arbitration Agreement ....................................................................3

     A.    There Is No Valid Arbitration Agreement with Ryan .............................3

     B.    Any Obligation To Execute The Arbitration Agreement Was Excused Or Waived............................................................................................6

II.    Each Cause of Action is Properly Stated ........................................................8

     A.    Defendants Purposefully Ignore the Facts Alleged in the Complaint....................8

     B.    The Plaintiffs State Valid Claims for Breach of Contract ....................10

     C.    Out of State Employers are Subject to the Illinois Wage Payment and Collection Act ........................................................................................12

     D.    Ryan Adequately States A Claim For Breach Of Fiduciary Duty ........................14

     E.    Plaintiffs Have Adequately Stated A Claim For Unjust Enrichment. ..................15

     F.    Breach of Covenant of Good Faith and Fair Dealing is Properly Pled.................16

     G.    Plaintiffs Have Adequately Stated A Claim For Promissory Estoppel.................17

     H.    Plaintiffs Have Adequately Alleged a Scheme To Defraud In Support of Fraudulent Inducement Claims............................................................18

     I.    Facts Alleged By Tom Aprill Are More Than Sufficient To State Claims For Fraudulent Inducement........................................................22

III.   Aquila Can Be Held Liable In His Individual Capacity .................................23

IV.   Defendants' Motion to Strike Should be denied.............................................25

     CONCLUSION......................................................................................................27

## Table of Authorities

**Cases**

*AK FortySeven Records Ltd. Co. v. Bah. Ministry of Tourism*, No. 4:17-cv-3750,
2018 U.S. Dist. LEXIS 66105 (S.D. Tex. Apr. 19, 2018) .................................................16

*Allen v. Hines Ranches of Texas, Inc.*, No. 03-03-00167-CV, 2003 Tex. App. LEXIS 10332
(Tex. App. Dec. 11, 2003) ...........................................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................2

*Bank of Naperville v. Holz*, 86 Ill.App.3d 533 (2nd Dist. 1980). .....................................22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................2, 3

*In re Bunzl USA, Inc.*, 155 S.W.3d 202 (Tex. App. 2004)..............................................5

*Carlson v. CSX Transp., Inc.,* 758 F.3d 819 (7th Cir. 2014) ..........................................2

*Consolidated Chassis Management LLC v. Northland Insurance Co.*, No. 1-19-cv-05287, 2020
U.S. Dist. LEXIS 197520 (N.D. Ill. Oct. 23, 2020).....................................................2

*Contract Office Installations, Inc. v. Hollman, Inc.*, No. 1:17 CV 3729, 2017 U.S. Dist. LEXIS
194863 (N.D. Ill. Nov. 28, 2017)..................................................................................8

*Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006)...........................25

*Duran v. Bar-S Foods Co.*, No. H-15-0788, 2015 U.S. Dist. LEXIS 192675
(S.D. Tex. Oct. 27, 2015),...........................................................................................12

*Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc.*, 75 F. Supp. 3d 883
(N.D. Ill. 2014)...................................................................................................23, 24

*Entm't Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792 (N.D. Tex. 2010) ........................15

*Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801 (7th Cir. 2011)..........................6, 8

*Fulcrum Credit Partners LLC v. ChipMOS Technologies Inc.*, No. A-10-CA-060-SS,
2010 U.S. Dist. LEXIS 151708 (W.D. Tex. Mar. 29, 2010) ....................................16

*Gadsen v. Home Pres. Co*., 2004 Del. Ch. LEXIS 14 (February 20, 2004) ................................25

*Gallardo v. Scott Byron & Co.*, No. 12-cv-7202, 2014 U.S. Dist. LEXIS 4634
(N.D. Ill. Jan. 14, 2014) ...........................................................................................14

*General Electric Credit Auto Lease, Inc. v. Jankuski*, 1988 Ill. App. LEXIS 1717
(1st Dist. December 12, 1988) ............................................................................21, 22

*Grane v. Grane*, 130 Ill. App. 3d 332, 473 N.E.2d 1366 (2nd Dist. 1985) ...................................21

*Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988 (7th Cir. 1991) .....12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___U.S.___ , ___, 139 S. Ct. 524 (2019) .........3

*Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 835 N.E.2d 113 (5th Dist. 2005) .............................3

*Johnson v. Structured Asset Services, LLC*, 148 S.W.3d 711 (Tex. App. 2004) ............................7

*LaScola v. US Sprint Communications*, 946 F.2d 559 (7th Cir. 1991) .........................................16

*Lee v. Hasson*, 286 S.W.3d 1 (Tex. App. 2007) .........................................................................15

*Lewis v. Abernathy*, 2016 U.S. Dist. LEXIS 89113 (N.D. Ind. July 11, 2016) ...........................26

*Manuel v. Lucenti*, No. 04-C-2531, 2004 U.S. Dist. LEXIS 23102 (N.D. Ill. Nov. 10, 2004) .....25

*Marzano v. Proficio Mortgage Ventures, LLC*, 942 F. Supp. 2d 781 (N.D. Ill. 2013)...................6

*Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 U.S. Dist. LEXIS 7619
(N.D. Ill. Mar. 18, 2005) ...........................................................................................13

*Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002)..................21

*Miller v. Miller*, 700 S.W.2d 941 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ............................15

*Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 18 Tex. Sup. Ct. J. 144 (1974) ...........................12

*Morris v. IBM*, No. 1:18-CV-0042-LY, 2018 U.S. Dist. LEXIS 222568
(W.D. Tex. Nov. 29, 2018) .........................................................................................11

*Morris v. Mergenthaler*, 1980 Del. Ch. LEXIS 546 (Del. Ch. October 14, 1980).......................25

*Mowbray v. Avery*, 76 S.W.3d 663 (Tex. App. 2002) ................................................................15

*National Union Fire Insurance Co. v. John Zink Co.*, No. 13-08-00589-CV, 2010 Tex. App.
LEXIS 9013 (Tex. App. Nov. 10, 2010)....................................................................6, 7

*Next Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 U.S. Dist.
LEXIS 129374 (N.D. Ill. July 31, 2018).................................................................8, 21

*Provision Group, Inc. v. Crown Toxicology, Ltd.*, No. 5:16-CV-1291-DAE, 2017 U.S. Dist.

LEXIS 226644 (W.D. Tex. Oct. 19, 2017) .......................................................................12

*Ragan v. BP Products North America*, No. 1:17 C 9208, 2020 U.S. Dist. LEXIS 4196
(N.D. Ill. Jan. 10, 2020) .................................................................................................14

*Safeco Insurance Co. of America v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913
(Tex. App. 2018)............................................................................................................7

*Salisbury v. Chapman Realty*, 124 Ill. App. 3d 1057 (3d Dist. 1984) .........................................21

*Schultz v. Sallie Mae, Inc.*, No. 99 C 3613, 1999 U.S. Dist. LEXIS 16870
(N.D. Ill. Oct. 27, 1999)............................................................................................11, 12

*Sembos v. Philips Components*, 376 F.3d 696 (7th Cir. 2004) ................................................17, 18

*Shaw Equipment Co. v. Hoople Jordan Construction Co.*, 428 S.W.2d 835
(Tex. Civ. App. 1968) ....................................................................................................7

*Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434-35 (Tex. 1986).....................................21

*Stamatakis Industries, Inc. v. King*, 165 Ill.App.3d 879 (1st Dist. 1987)....................................21

*Sullivan v. Leor Energy LLC*, 600 F.3d 542 (5th Cir. 2010) ...................................................16

*Suncraft Technologies, Inc. v. Zirkon Druckmaschinen GmbH*, No. 99 C 1456, 2000 U.S. Dist.
LEXIS 3228 (N.D. Ill. Mar. 9, 2000)...............................................................................12

*Sun Life Assurance Co. of Can. v. Great Lakes Bus. Credit LLC*, 968 F. Supp. 2d 898
(N.D. Ill. 2013)..........................................................................................................26

*Tidwell v. Toyota Auto Mart, Inc.*, 59 Ill. App. 3d 378, 375 N.E.2d 540 (2nd Dist. 1978)...........12

*Tuck v. Miller*, 483 S.W.2d 898 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) .......................15

*Vejara v. Levior Int'l LLC*, No. 04-11-00595-CV, 2012 Tex. App. LEXIS 8975
(Tex. App.—San Antonio Oct. 31, 2012, pet. denied) ...........................................................15

*VPHI, Inc. v. National Educ. Training Group*, 1995 U.S. Dist. LEXIS 1365
(N.D. Ill. January 20, 1995) ......................................................................................25, 26

*Wartsila Fin. OY v. Duke Capital LLC*, No. H-06-3908, 2007 U.S. Dist. LEXIS 57699
(S.D. Tex. Aug. 8, 2007)...............................................................................................12

*Watts v. ADDO Management, L.L.C.*, 2018 IL App (1st) 170201, 97 N.E.3d 75 ........................13

*Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 917 N.E.2d 64 (2nd Dist. 2009) ............16

iv

*Weyent v. Vertical Networks, Inc.*, 2004 U.S. Dist. LEXIS 1354 (N.D. Ill. February 4, 2004) ....13

*Willis v. Donnelly*, 199 S.W.3d 262 (Tex. 2006)..........................................................................15

**Other Authorities**

Fed. R. Civ. P. 12(f)...............................................................................................................25

705 ILCS 225/1 ......................................................................................................................27

Illinois Wage Payment and Collection Act, 820 ILCS 115/1 ................................................12

Illinois Wage Payment and Collection Act, 820 ILCS 115/13 ..............................................24

Illinois Wage Payment and Collection Act, 820 ILCS 115/14 ..............................................27

56 Ill. Adm. Code 300.440(d) (2014) ....................................................................................13

56 Ill. Adm. Code 300.450 (2014).........................................................................................14

Del. Code Ann. tit. 6, § 18-303 (1994) ..................................................................................24

Tex. Civ. Prac. & Rem. Code § 38.001 .................................................................................27

Ryan L. Aprill ("Ryan") and Thomas S. Aprill ("Tom") (collectively "Plaintiffs"), by and through their attorneys, submit their response to the motion of Anthony Aquila ("Aquila"), Aquila Family Ventures, LLC, AFV Partners LLC, AFV Management Advisors LLC and AFV Partners Co-Investment I LLC (collectively "Defendants"), to dismiss the complaint with prejudice pursuant to Federal Rules of Civil procedure 12(b)(3), 12(b)(6), and 9(b), and to strike certain allegations pursuant to Rule 12(f).

## INTRODUCTION

This is a case in which the Plaintiffs were actively recruited and lured by Defendant Aquila to leave their jobs based on false promises of compensation and benefits. As detailed in the Complaint (and purposefully ignored by Defendants), Aquila enticed Plaintiffs away from their lucrative careers to join him in developing a new private equity fund with promises of executive-level compensation, including significant salaries, bonus payments, and equity interests in various investment vehicles commonly known as "carried interest." Despite accepting the benefits of the Plaintiffs' services, Aquila wrongfully and intentionally failed to pay Plaintiffs even a dime of the promised compensation over the course of nearly a year of employment. Moreover, after reneging on payment of promised compensation after Plaintiffs were lured to leave their former jobs in reliance on Aquila's illusory promises, Aquila compelled Plaintiffs to enter into a series of Promissory Notes that were purportedly secured by equity interests; those interests were never awarded, and the notes were merely a scheme by Aquila to create leverage over the Plaintiffs.

Aquila deliberately failed to pay Ryan and Tom the compensation they were owed and purposefully delayed finalizing and signing the carried interest documents reflecting his promises, instead using a variety of excuses and tactics to avoid paying the Plaintiffs the fair and promised compensation for their significant and valuable work. Aquila also refused to pay other employees

1

and professionals, and engaged in improper business practices, such as using investor funds on his private airplane. After working tirelessly for almost a year without *any* compensation whatsoever and observing Aquila's oppressive and unscrupulous behavior, Ryan and Tom ultimately retained legal counsel who demanded that Aquila pay what he owed and honor his agreements. In response and in retaliation, Aquila fired Ryan and Tom without cause. In the end, Plaintiffs were duped by Aquila, who touted himself as a "dealmaker" and the founder of Solera Group, a huge success story. In truth, Aquila was terminated from Solera for cause. Aquila is nothing but a professional con man, and Plaintiffs are his latest victims.

Plaintiffs filed this action to recover what they are owed. Defendants move to dismiss all of Plaintiffs' claims, contending that Ryan's claims must be arbitrated in Texas, and that every cause of action fails to state a valid claim. As discussed below, Defendants have not and cannot meet their burden of establishing that a valid arbitration agreement exists. Additionally, Defendants utterly ignore the detailed facts alleged in the Complaint which defeat their arguments. For the reasons set forth below, Defendants' Motion to Dismiss should be denied in its entirety.

## **LEGAL STANDARD**

A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Consolidated Chassis Management LLC v. Northland Insurance Co.*, No. 1-19-cv-05287, 2020 U.S. Dist. LEXIS 197520, at *2 (N.D. Ill. Oct. 23, 2020). In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the plaintiff's complaint "in the light most favorable to the plaintiff, accept well pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 826 (7th Cir. 2014). The court must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,*

2

550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

## ARGUMENT

### I. Defendants Have Failed To Meet Their Burden of Establishing The Existence of a Valid Arbitration Agreement.

Defendants initially contend that Ryan's claims must be arbitrated in Texas, while Tom's claims should be adjudicated by this Court. (*Motion*. at p. 6).[1] This argument is plainly wrong. There is no valid arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.,* ___U.S.___ , ___, 139 S. Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."). "The party seeking to compel arbitration has the burden of proving that an arbitration agreement exists and that the claims raised are within the agreement's scope." *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983, 835 N.E.2d 113, 121 (5th Dist. 2005). Defendants have failed to meet their burden of proving as a matter of law that an agreement ever existed, and their motion to dismiss and compel arbitration can and should be denied for this reason alone.

### A. There Is No Valid Arbitration Agreement with Ryan.

The facts are that: (1) the parties accepted the terms of employment contained in a marked-up, unsigned offer letter exchanged by email between Ryan and the AVF Ventures CFO (*Compl*. ¶38) (the "Unsigned Offer Letter"); (2) the Unsigned Offer Letter states that the parties "shall execute" an arbitration agreement (*Motion* at Ex. B); (3) the Unsigned Offer Letter was never signed by Aquila or tendered by Defendants to Ryan for signature (*Compl*. ¶39); and (4) the Mutual Arbitration Agreement was never signed by either party. (*Motion* Ex. C).

---

[1] Defendants' Motion and Memorandum of Law incorporated therein are collectively referred to as "*Motion*."

In their Motion, Defendants summarily argue in a single paragraph, without analysis or explanation, that the parties entered into an arbitration agreement. They conclude that "the Offer Letter, alleged by Ryan to be the operative contract, incorporates an arbitration agreement, which provides that 'all disputes and claims' between the parties 'shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator' in Dallas, Texas." (*Motion* at p. 6). Defendants attach to their Motion to Dismiss the unsigned Offer Letter (Exhibit B) and an unsigned "Mutual Arbitration Agreement" which makes no reference to the Offer Letter (Exhibit C).

Defendants' bald statement that there is an arbitration agreement "incorporated" into the Unsigned Offer Letter is simply not true. No support for that position can be found in the Unsigned Offer Letter or the unsigned Mutual Arbitration Agreement, as a matter of law. In fact, the only mention of arbitration in the Unsigned Offer Letter is that both Ryan and AFV "shall execute the arbitration agreement set forth in Exhibit B" (*Motion* Ex. B, ¶7), which was never tendered for signature by Defendants or executed by *either* party (Compl. ¶39). Quite clearly, based on the language in the Unsigned Offer Letter discussing "execution" of a written agreement, and on the unsigned "Mutual Arbitration Agreement" itself, the parties contemplated that any arbitration agreement *would be in writing* and would be distinct from the Unsigned Offer Letter itself. It is indisputable that there is no written arbitration agreement between the parties.

Defendants conspicuously avoid any mention of the terms of the Unsigned Offer Letter, likely because the Unsigned Offer Letter does not state or in any way suggest that the unsigned "arbitration agreement" is incorporated or, significantly, that Ryan's employment was subject to or contingent upon execution of the arbitration agreement. Instead, the opposite is true. The Unsigned Offer Letter specifically identifies two conditions precedent to Ryan's employment, and arbitration is *not* one of them. Specifically, the Unsigned Offer Letter provides that a

confidentiality agreement in the form of "Exhibit A" must be signed by Ryan "as a condition of [his] employment." (*Motion* Ex. B at ¶3.). And, the terms of the confidentiality agreement are expressly incorporated into the Unsigned Offer Letter. (*Id*.) Ryan's employment was also expressly "contingent upon" a background check (*Id*. ¶9). Unlike the confidentiality agreement and background check, Ryan's employment was not conditioned upon an arbitration agreement, a reality plainly demonstrated by the fact that Ryan worked for almost one year, providing valuable services to Defendants, without an arbitration agreement ever being tendered to him and without it being executed by either party. The parties never actually agreed to arbitrate, either during the entire course of Ryan's employment or afterwards.

Moreover, not only does the Unsigned Offer Letter require that the parties "execute" the written arbitration agreement for that agreement to become effective, which never happened, the unsigned arbitration agreement itself also provides that it does not become effective until it is signed (*Motion* Ex. C; at ¶7) ("By signing this Agreement, Employee acknowledges that he or she is knowingly and voluntarily waiving the right to file a lawsuit…."). An arbitration agreement simply was not reached where neither party signed the document, and *both* the Unsigned Offer Letter and alleged arbitration agreement's own language require a signed written agreement to be effective. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App. 2004) ("[T]he parties may provide that the signature of each party is a prerequisite to a binding written contract).

Defendants do not even attempt to explain how they get from "Point A", evidence of an agreement by the parties to each execute a written arbitration agreement that was not tendered by Defendants or executed by either party during Ryan's employment that on its face requires Ryan's signature to be operative and was not a condition of employment, to "Point B", their conclusion that there was a binding arbitration agreement. They have avoided any discussion of the facts, and

the law presented in their Motion is sparce and plainly inapplicable. They cite to *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 808-09 (7th Cir. 2011) and *Marzano v. Proficio Mortgage Ventures, LLC*, 942 F. Supp. 2d 781, 788-89 (N.D. Ill. 2013), despite *Faulkenberg* involving a *signed* arbitration agreement, and *Marzano*, too, involving circumstances where "plaintiffs [did] not contest the validity of the arbitration provision." *Marzano*, 942 F. Supp. 2d 781, 788-789. Neither of these cases provides any authority for this Court to find that the parties entered into a valid agreement to arbitrate in the first instance. To the extent that Defendants will argue for the first time in reply that Ryan was somehow obligated to execute the arbitration agreement, such an assertion is woefully untimely (*see* Sec. I(B), below) and would, in any event, merely serve as a (losing) claim that Ryan breached the Unsigned Offer Letter, not that a binding arbitration agreement was ever reached. Defendants have utterly failed to meet their burden of proving as a matter of law that a valid arbitration agreement exists between the parties.

      **B.**    **Any Obligation To Execute The Arbitration Agreement Was Excused Or Waived.**

Even assuming *arguendo* that the parties' agreement to execute a written arbitration agreement was a condition of Ryan's employment and obligated him to execute the arbitration agreement after his termination, which is unsupportable both as a matter of law and as-applied given the facts set forth above, Defendants' Motion to Dismiss and Compel Arbitration should nevertheless be denied. Because Defendants did not sign the arbitration agreement and never tendered the agreement, Ryan was excused from any obligation to execute the arbitration agreement. "The failure of a condition in a contract is excused when the party for whom the condition was intended to benefit, with knowledge of the failure of the condition, accepts performance of the contract without insisting on satisfaction of the condition." *National Union*

*Fire Insurance Co. v. John Zink Co.*, No. 13-08-00589-CV, 2010 Tex. App. LEXIS 9013, at *44-47 (Tex. App. Nov. 10, 2010).

Relatedly, it is well-established that contractual rights can be waived, and that "a party's silence or inaction for a period of time long enough to show an intention to yield the known right … is enough to prove a waiver." *Johnson v. Structured Asset Services, LLC*, 148 S.W.3d 711, 722 (Tex. App. 2004). In *Johnson*, the court found waiver after a failure to object to an alleged violation of the contract for a period of 11 months. *Id*. at 724-725. And in *Safeco Insurance Co. of America v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913, 921 (Tex. App. 2018), the court found that silence for a period of only 6 months was sufficient to demonstrate waiver. Even under the terms most generous to the Defendants, they had over a year between the hiring of Ryan and his ultimate and unjust firing to take any action in furtherance of executing the arbitration agreement. Instead, Defendants did nothing.

The issue of whether any obligation to execute the arbitration agreement was excused or waived is generally a question of fact unless, as here, the facts are indisputable. *Shaw Equipment Co. v. Hoople Jordan Construction Co.*, 428 S.W.2d 835, 840 (Tex. Civ. App. 1968). Notably, the Unsigned Offer Letter does not contain a non-waiver provision. See *Allen v. Hines Ranches of Texas, Inc.*, No. 03-03-00167-CV, 2003 Tex. App. LEXIS 10332, at *5-6 (Tex. App. Dec. 11, 2003) (finding waiver in the absence of an unambiguous non-waiver clause). Under these circumstances—Defendants' failure to execute the arbitration agreement or tender the agreement to Ryan for his execution, Defendants' delay for over one year (until after Ryan's employment had been terminated) to take any action reflecting an intention to enforce any obligation to execute the arbitration agreement, and the parties' decision to not include a non-waiver provision—any

obligation or right to enforce an execution of the arbitration agreement is waived as a matter of law.

## II.    Each Cause of Action is Properly Stated.[2]

### A.  Defendants Purposefully Ignore the Facts Alleged in the Complaint.

In arguing that each cause of action in the Complaint fails to state a claim, Defendants completely ignore significant allegations of fact, and at numerous times improperly seek to contradict the facts. For example, as it relates to Ryan, Defendants seek to perpetuate a falsehood that Ryan pursued Aquila because he was searching for a "golden ticket." (*Motion* at p. 1). In truth, Aquila actively recruited Ryan for months, beginning in April 2019, and enticed him with (false) promises to leave his lucrative job (*Compl.* ¶¶23, 32-36). And, as it turns out, the relationship with Aquila was actually not worth a plugged nickel, as Aquila reneged on his promises and deceived and manipulated Ryan and Tom to work for free for almost one year while purportedly becoming indebted to him.

As to Ryan, a contract was formed on August 5, 2019 entitling him to salary, bonus, and carried interest. (*Compl.* ¶38). On October 31, 2019, Aquila specifically set the amount of salary, bonus, and carried interest (as evidenced by subsequent written budgets for the company), accepted the benefits of Plaintiffs' valuable services, had carried interest papers drawn up reflecting the

---

[2] The Plaintiffs do not dispute that the Offer Letter designates that Texas law shall apply to "the rights and obligations of the parties," and therefore agree that Texas law governs the breach of contract claims and fiduciary duty claim in this dispute (Counts I, III, and IX). In Illinois, the law applicable to a contract is that which the parties intended; in this case, Texas law. *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809 (7th Cir. 2011). Moreover, Illinois and Texas do not differ as to their analysis of contract formation principles (*Id.*), and the same is true regarding "substantive contract law principles." *Contract Office Installations, Inc. v. Hollman, Inc.*, No. 1:17 CV 3729, 2017 U.S. Dist. LEXIS 194863, at *19 (N.D. Ill. Nov. 28, 2017). As to the remaining quasi-contract, extra-contractual, and state law claims, (Counts II, IV, V, VI, VII, VIII, X, XI, XII, XIII, and XIV), Illinois law applies as the law of the forum state when neither party raises or establishes any conflict. *Next Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 U.S. Dist. LEXIS 129374, at *17 (N.D. Ill. July 31, 2018). The Defendants do not dispute that Illinois law applies to these claims, and have otherwise failed to establish any conflict. *Motion* at p. 16, fn 14.

parties' agreement (but kept pushing off signing them while reassuing Plaintiffs of his intent to do so), and then refused to honor his promises. Defendants' arguments assume that time stood still on August 5, 2019. They completely ignore all that followed, including the parties' course of performance. There is no legal basis to ignore the facts alleged in the complaint, and Defendants offer none.

Defendants disregard the specific allegations establishing the agreements between the parties. The allegations set forth a detailed timeline demonstrating Aquila's false promises and assurances and Defendants' obligation to pay salary, bonus, and a percentage of carried interest. Defendants also ignore the fact that Aquila agreed to use the 2018 Heidrick & Struggles ("H&S") compensation report and methodology as the basis for establishing Ryan's total compensation, and that Ryan would be paid commensurate with that of a "Principal" for a fund size of $500M - $749M as set forth in the H&S report. Based on that report, Aquila agreed that Ryan's annual salary would be set at $236,000, annual bonus at $234,000, and his carried interest allocation would be valued at $4,612,000, subject to future appreciation based on investment performance. (*Compl.* at ¶56).

Defendants also ignore the other specific allegations in the complaint regarding Aqulia's initial job offer to Ryan (*Compl.* at ¶36); the fact that Ryan was only willing to leave his employment at Chaifetz Group if he was granted a carried interest (*Compl.* at ¶36); the fact that Aquila promised to formalize the terms of any loans and the carried interest vehicle (*Compl.* ¶¶43-44); the specific terms of the proposed Carried Interest Documents (*Compl.* ¶¶45-52); the fact that Ryan's promised compensation and carried interest were reflected in the companies' budgets (*Compl.* at ¶58); the fact that Ryan's willingness to execute the Promissory Notes was based on representations that Aquila would execute the Carried Interest Documents and his loans would be

secured by his equity interest (*Compl.* at ¶58); the fact that Aquila promised to contribute AFV Partners' interest in Sportradar and APG to FSCP Co-Investment (*Compl.* at ¶¶47, 61, 80, 127); and finally the promises by Aquila that he would satisfy the promised compensation and carried interests. (*Compl.* at ¶70).

Defendants also completely ignore numerous factual allegations supporting Tom's claims. Plaintiffs allege that Aquila offered Tom a full-time position as the head of Human Resources for AFV Partners and its other companies at an annual salary of $164,000, an annual bonus of $155,000, and a carried interest allocation with a value of approximately $1.5 million. (*Compl.* ¶ 93); in reliance on Aquila's offer of employment with AFV Partners, Tom resigned his position as a partner with DHR International (*Compl.* ¶94); Tom worked on average over 80 hours per week (*Compl.* ¶95); after starting his employment, Tom was informed that payment of his salary would be deferred and that he would need to sign a Promissory Note in order to receive any payment from AFV Partners (*Compl.* ¶96); Tom was assured that the loan proceeds would be treated as an advance on his carried interest and that "Tony would take care of [him]." *Id.*; between November 25, 2019 and June 2020, Tom continued to work for AFV Partners and, despite repeated promises to pay owed compensation by Aquila, AFV Partners never paid any salary or bonuses to Tom and Aquila failed to execute the Carried Interest Documents (*Compl.* ¶98); on May 29, 2020, Tom sent a demand letter, through his attorney, to Aquila and AFV Partners for payment of cash compensation and his carried interest (*Compl.* ¶99); and in response, on June 2, 2020, Aquila terminated Tom's employment without cause (*Compl.* ¶100).

### B. The Plaintiffs State Valid Claims for Breach of Contract.

Defendants argue that Ryan fails to state a breach of contract claim in Count I because the Unsigned Offer Letter authorizes Aquila to determine the amount of Ryan's bonus and carried

interest. (*Motion* at p. 8). While it is true that Ryan's "Initial Compensation" is set forth in the Unsigned Offer Letter and allows Aquila to determine Ryan's bonus and carried interest (*Motion* Ex. B, ¶1), Defendants completely ignore the allegations stating that Aquila did in fact make those determinations. Plaintiffs allege that on October 31, 2019, Aquila set Ryan's bonus and carried interest at a level commensurate with that of a "Principal" for a fund size of $500M - $749M as set forth in the H&S report which equates to an annual salary of $236,000, annual bonus at $234,000 and his carried interest allocation would be valued at $4,612,000, subject to future appreciation based on investment performance. (*Compl.* at ¶56). As proof of Aquila's determinations, those figures are reflected in AFV's budgets. (*Compl.* at ¶57). Defendants likewise ignore the allegations in support of Tom's breach of contract claim in Count IX that Aquila offered Tom an annual salary of $164,000, an annual bonus of $155,000, and a carried interest allocation with a value of approximately $1.5 million. (*Compl.* at ¶¶93, 237). No offer letter was ever tendered to Tom, despite Defendants' reference to "the draft contribution documents." (*Motion* at p. 14). The salaries, bonuses and carried interests set by Aquila have not been paid—in breach of both Ryan and Tom's employment agreements.

Defendants argue that discretionary bonuses cannot form the basis for a breach of employment or contract claim as a matter of law, citing *Morris v. IBM*, No. 1:18-CV-0042-LY, 2018 U.S. Dist. LEXIS 222568, at *9 (W.D. Tex. Nov. 29, 2018). But in *Morris*, the court found that the plaintiff had failed to allege facts that demonstrated a mutual intent to award the bonus compensation. *Id*. Here, the Plaintiffs allege such facts – the Complaint alleges mutual assent to specific salaries, bonuses, and carried interest compensation. (*Compl.* ¶¶ 56, 93, and 237). *Morris* is thus inapposite to the actual issues here, and none of the other cases cited by Defendants fare any better. See *Schultz v. Sallie Mae, Inc.*, No. 99 C 3613, 1999 U.S. Dist. LEXIS 16870, at *5-7

(N.D. Ill. Oct. 27, 1999) (company "retained discretion to terminate the bonus plan at any time," given that the company expressly retained the flexibility to "modify award calculation and distribution dates at any time, for any reason."); *Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) (the terms of a contract offered a conditional kickback for which the condition was not satisfied); *Provision Group, Inc. v. Crown Toxicology, Ltd.*, No. 5:16-CV-1291-DAE, 2017 U.S. Dist. LEXIS 226644, at *8 (W.D. Tex. Oct. 19, 2017) (pleading lacked definite terms, especially rates to be paid); *Wartsila Fin. OY v. Duke Capital LLC*, No. H-06-3908, 2007 U.S. Dist. LEXIS 57699, at *10 (S.D. Tex. Aug. 8, 2007) (cross-motions relating to the enforceability of an arbitration award; summary judgment for plaintiff denied as premature).

The Defendants also assert that the Unsigned Offer Letter invalidates the Plaintiffs' claims for bonus compensation because the Letter contains a merger clause. They cite *Suncraft Technologies, Inc. v. Zirkon Druckmaschinen GmbH*, No. 99 C 1456, 2000 U.S. Dist. LEXIS 3228, at *19-20 (N.D. Ill. Mar. 9, 2000) and *Duran v. Bar-S Foods Co.*, No. H-15-0788, 2015 U.S. Dist. LEXIS 192675, at *11-13 (S.D. Tex. Oct. 27, 2015), which involved a written contract that superseded *prior* offers or agreements. However, in both Illinois and Texas, where a bonus is agreed upon, an employee is entitled to that bonus. *See Tidwell v. Toyota Auto Mart, Inc.*, 59 Ill. App. 3d 378, 380-81, 375 N.E.2d 540, 542 (2nd Dist. 1978); *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775, 18 Tex. Sup. Ct. J. 144 (1974). While the Unsigned Offer Letter does state that it "supersedes all prior offers, negotiations, and agreements" (Motion, Ex. B), it *does not* preclude subsequent agreements, nor does it preclude the actual exercise of discretion alleged by both Ryan and Tom in the Complaint. (*Compl.* ¶¶ 56, 93).

     **C.**     **Out of State Employers are Subject to the Illinois Wage Payment and Collection Act.**

The Defendants seek dismissal of Counts II and X on the basis that Ryan and Tom cannot sue under the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* ("IWPCA")) because the Defendants were not Illinois employers, citing *Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 U.S. Dist. LEXIS 7619, at *30 (N.D. Ill. Mar. 18, 2005). However, the relevant regulations were amended in 2014, and subsequent cases have clarified that "the Wage Act's application is not limited to any specific quantum of work performed in Illinois but, in fact, may apply in certain circumstances even where all of the work is performed outside of this state." *Watts v. ADDO Management, L.L.C.*, 2018 IL App (1st) 170201, ¶¶ 20-21, 97 N.E.3d 75 ("purpose is to protect employees in Illinois from being stiffed by their employers.") *See also* 56 Ill. Adm. Code 300.440(d) (2014).

The Plaintiffs allege specifically that "on August 7, 2019, Ryan commenced his formal employment with AFV Partners and established a home office in Chicago, Illinois, which became his primary workplace." (*Compl.* ¶ 41). Therefore, under the 2014-amended regulations and *Watts*, the Defendants are properly designated as "employers" for purposes of claims brought under the IWPCA. Similarly, Plaintiffs allege Tom was an Illinois resident, and was employed full-time for AFV Partners. (*Compl.* ¶¶6, 98). Both Ryan and Tom have therefore alleged valid claims under the IWPCA.[3] Additionally, the question of whether Defendants are Illinois employers is a question of fact which cannot be decided in connection with a motion to dismiss. *Weyent v. Vertical Networks, Inc.*, 2004 U.S. Dist. LEXIS 1354*7 (N.D. Ill. February 4, 2004).

The Defendants also argue that Ryan and Tom cannot sue under the IWPCA because "the statute does not confer rights to compensation that are absent from the employee's contract," citing

---

[3] Additionally, Plaintiffs' can easily establish that post-termination payments received by Ryan and Tom alleged in the complaint (*Compl.* ¶¶136, 266) were both subject to Illinois withholding.

*Gallardo v. Scott Byron & Co.*, No. 12-cv-7202, 2014 U.S. Dist. LEXIS 4634, at *51 (N.D. Ill. Jan. 14, 2014). Again, the Plaintiffs' salaries, bonuses, and carried interest allocations were determined (*Compl.* ¶¶ 56, 93), which is enforceable under the IWPCA. "An agreement is broader than a contract and an exchange of promises or any exchange is not required for an agreement to be in effect. An agreement may be reached by the parties without the formalities and accompanying legal protections of a contract and may be manifested by words or by any other conduct, such as past practice." 56 Ill. Adm. Code 300.450.

Ryan and Tom are entitled to the compensation they earned, including the bonuses and carried interest compensation. "An employee has a right to an earned bonus when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met. Unless one of the conditions for the bonus is that the employee be on the payroll at the time of the bonus payout, the bonus is due and owing to the employee at the time of separation." *Ragan v. BP Products North America*, No. 1:17 C 9208, 2020 U.S. Dist. LEXIS 4196, at *8-9 (N.D. Ill. Jan. 10, 2020).

### D. Ryan Adequately States A Claim For Breach Of Fiduciary Duty.

Defendants seek dismissal of Count III and assert that a fiduciary duty is not created solely by an employer-employee relationship. (*Motion* at p. 12). However, while accurate, that is not the claim that Ryan has asserted, as Aquila's informal fiduciary duty arises under Texas law. Ryan's relationship with Aquila existed before the employment began, during which Aquila made false promises and assurances to lure Ryan to leave a lucrative job (*Compl.* ¶¶32-36; 144-146). Aquila engaged in oppressive conduct as the sole controlling owner and manager of AFV, depriving Ryan

of any compensation whatsoever for over ten months of employment and forcing him to take out three loans because Aquila held his pay without any justification (*Id.* ¶¶154-155).

Texas courts recognize that an informal fiduciary duty may exist in circumstances where, as here, a person abuses the trust of and exerts power over another. *See generally Willis v. Donnelly*, 199 S.W.3d 262, 277 (Tex. 2006); *Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App. 2007) ("Stated another way, a party fails to comply with his fiduciary duty 'where influence has been acquired and abused, and confidence has been reposed and betrayed.'"); *Miller v. Miller*, 700 S.W.2d 941, 945-46 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (stating that shareholders' intimate knowledge of company's affairs supported finding a fiduciary relationship); *Tuck v. Miller*, 483 S.W.2d 898, 905 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) (op. on reh'g) (holding that superior business expertise, among other factors, supported a finding of a confidential relationship); *Vejara v. Levior Int'l LLC*, No. 04-11-00595-CV, 2012 Tex. App. LEXIS 8975, at *11 (Tex. App.—San Antonio Oct. 31, 2012, pet. denied) (mem. op.) (holding that "Vejara's control and intimate knowledge of the company's affairs and plans gave rise to the existence of an informal fiduciary duty to Levior").

The recognition of such a fiduciary relationship is "typically a question of fact." *Entm't Merch. Tech., L.L.C. v. Houchin*, 720 F. Supp. 2d 792, 797 (N.D. Tex. 2010), which warrants denial of Defendants' motion at this stage of the proceedings to allow a full development of the facts.

### E.    Plaintiffs Have Adequately Stated A Claim For Unjust Enrichment.

Defendants also seek dismissal of Counts VI and XII, incorrectly arguing that an unjust enrichment claim is not an independent cause of action under Texas law. They cite to *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. 2002), but blatantly ignore more recent case law directly to

the contrary, especially those cases that summarize the trends over time. "Although some Texas courts of appeals have held unjust enrichment is not a distinct independent cause of action but simply a theory of recovery, others have sharply disagreed. The Texas Supreme Court—although it has not definitively spoken on the issue—has suggested multiple times a cause of action for unjust enrichment *does* exist." *Fulcrum Credit Partners LLC v. ChipMOS Technologies Inc.*, No. A-10-CA-060-SS, 2010 U.S. Dist. LEXIS 151708, at *19 (W.D. Tex. Mar. 29, 2010) (internal citations omitted) (collecting cases). Defendants also cite to *Sullivan v. Leor Energy LLC*, 600 F.3d 542, 550 (5th Cir. 2010), to argue that the Plaintiffs have not pled any facts to entitle them to relief; they ignore that the Complaint, as discussed above, includes detailed and specific allegations. These allegations are more than sufficient to plead a claim for unjust enrichment. The alleged oral employment agreements are sufficient to sustain these claims. *See AK FortySeven Records Ltd. Co. v. Bah. Ministry of Tourism*, No. 4:17-cv-3750, 2018 U.S. Dist. LEXIS 66105, at *7 (S.D. Tex. Apr. 19, 2018) ("the law does not require that plaintiffs plead affirmatively that a contract is written").[4]

### F. Breach of Covenant of Good Faith and Fair Dealing is Properly Pled.

The Defendants argue that Ryan has failed to state a claim in Count IV for breach of the covenant of good faith and fair dealing, primarily asserting that no such cause of action exists, and alternatively that no implied covenant exists in at-will employment contracts. (*Motion* at p. 15). But while the Plaintiffs acknowledge there is no claim for good faith and dealing relating to the *negotiation* of contracts, a claim does exist – and is enforceable – where, as here, it pertains to the *performance* of contracts. "A cause of action for a breach of good faith may exist when it is

---

[4] Although the Defendants do not address whether Plaintiffs' unjust enrichment claims can be brought under Illinois law, they surely can. Plaintiffs are permitted to plead unjust enrichment claims in the alternative. *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522, 917 N.E.2d 64, 73 (2nd Dist. 2009).

predicated on a contract right with independent validity." *LaScola v. US Sprint Communications*, 946 F.2d 559, 566 (7th Cir. 1991). There can be no dispute that Plaintiffs are legally entitled to the performance of their contracts.

The Defendants argue, with little explanation, that Ryan's claims are invalid because he was an at-will employee and because no claim can be made under this theory if brought by an at-will employee. But the claim here is based upon the Defendants' failure to perform the contract by terminating him without paying the agreed-upon salary, bonus, and carried interest allocations, *not* for wrongful termination. *Id*. Here, based on the facts alleged in the complaint, Ryan was entitled to compensation that the Defendants refused to pay, and the Defendants terminated Ryan to avoid paying that agreed-upon compensation. Defendants' arguments about at-will employment are inapposite and should be disregarded.

Finally, any suggestion by the Defendants that Plaintiffs have alleged no damages should be rejected. The allegations in the Complaint are clear that the payments received by both Ryan and Tom after their termination were insufficient to compensate them for their earned salary, earned bonuses, and to compensate them for the value of their carried interest. (*Compl.* ¶¶136-137; ¶¶260-261).

### G. Plaintiffs Have Adequately Stated A Claim For Promissory Estoppel.

Counts V and XI of the complaint fully and adequately allege claims for promissory estoppel, in the alternative. Without citation or specificity, the Defendants assert that "Plaintiffs' own allegations establish that any representation regarding an entitlement to carried interest or annual bonus were too indefinite, as a matter of law, to constitute unambiguous promises." (*Motion* at p. 16) (citing *Sembos v. Philips Components*, 376 F.3d 696, 704 (7th Cir. 2004)). Unlike in *Sembos*, where "Philips did not promise Sembos any specific position, salary, or other terms of

employment," *id.*, Plaintiffs' Complaint specifically alleges the terms of the compensation they agreed to with the Defendants, including specific salaries, bonuses and carried interest. (*Compl*. ¶¶56, 93, 182, 266). Defendants cannot simply ignore the well-pleaded facts that they find inconvenient.

The allegations in the Complaint identify unambiguous promises and agreements to award the Plaintiffs specific salaries, bonuses, and carried interest. And because Plaintiffs allege that the parties mutually agreed to the compensation, it can hardly be argued that "reliance was not reasonable as a matter of law" (*Motion* at p. 17) as the Defendants claim. Finally, the Defendants' argument that Plaintiffs have failed to plead reliance damages is baseless – the Complaint alleges that both Ryan and Tom relied upon promises made by Aquila over a period of months, both with regard to their oral employment offers, in relation to the agreed carried interest allocations, and in agreeing to execute the Promissory Notes. (*Compl*. ¶¶ 53, 56, 93, 96, 188, 270). Only by ignoring the well-pleaded allegations throughout the Complaint could the Defendants possibly argue that the Plaintiffs have failed to state a claim.

### H. Plaintiffs Have Adequately Alleged a Scheme To Defraud In Support of Fraudulent Inducement Claims.

The fraudulent inducement claims in Counts VIII and XIII arise out of a series of intentionally false statements and misrepresentations made by Aquila as part of a scheme designed to wrongfully induce both Plaintiffs to leave lucrative careers and accept employment with Aquila's investment fund AFV Partners. In Count VIII, Plaintiffs allege Aquila represented that he left Solera Group voluntarily to start up his own investment fund; that Aquila would be investing $100 million of his own funds to start up AFV Partners; that Ryan would be hired as a Principal, with a starting annual salary of $250,000 plus bonus, with an increase to $350,000 to come when they closed their first investment or bought their first company, and a percentage in the firms'

carried interest in its investments and Aquila represented that Ryan's carried interest would be valued at an estimated $15.9-$18.0 million, (*Compl.* at ¶220(a)-(e)). Plaintiffs allege these representations were false, that Aquila knew they were false when he made them, and that neither Aquila, nor AF Ventures, nor AFV Partners ever intended to pay Ryan his salary or bonus, or to grant Ryan any share of the carried interest. (*Compl.* at ¶¶221-222). Additionally, Aquila never intended to invest $100 million of his own funds to start up AFV Partners. (*Compl.* at ¶223). Ryan later learned through public filings that Aquila was terminated by Solera Group for cause. (*Compl.* at ¶28). Ryan relied on Aquila's representations in deciding to resign from his employment at Chaifetz Group and would not have resigned from his employment at the Chaifetz Group but for the representations of Aquila. (*Compl.* at ¶¶224-225).

Ryan further alleges that on August 13, 2019, shortly after commencing his employment with AFV Partners, Aquila demanded that Ryan have "*skin in the game*" in order to receive his promised carried interest, and demanded that any money paid to Ryan and the other co-founders be treated as loans and not salary, at least until the parties completed their first acquisition. (*Compl.* at ¶¶43-44). This was directly contrary to the terms of Ryan's employment. After completing their first investment, Aquila instructed Ryan to direct their legal counsel to set up the carried interest vehicle which was identified as identified as Defendants FSCP Co-Investment I. Aquila insisted that the carried interest vehicle be the same entity making the loans to the co-founding members, so that the loans would be secured by their equity interests. (*Compl.* at ¶¶47-52; Ex.'s 1-2). In reliance on the representations of Aquila and the Carried Interest Documents, Ryan executed the first of three (3) Secured Promissory Notes with FSCP Co-Investment I in the amount of $100,000 ("Promissory Note 1"). (*Compl.* at ¶53). Ryan continued to devote his full-time efforts working for AFV Partners as a senior-level executive in all areas of its business, and led all aspects of due

diligence, negotiations, and transaction execution for AFV Partners' investment in Sportradar and acquisition of Aircraft Performance Group ("APG") from Liberty Hall Capital Partners, including raising all of the equity and debt necessary to consummate the transaction. (*Compl.* at ¶54).

Plaintiffs further allege that on or about October 31, 2019, Aquila further represented to Ryan that his total compensation package, including carried interest, would be commensurate with that of a "Principal" for a fund size of $500M - $749M, with an annual salary at $236,000, annual bonus at $234,000, and an allocation of carried interest valued at $4,612,000. (*Compl.* at ¶56).

On January 2, 2020, Ryan executed a second Secured Promissory Note with FSCP Co-Investment I in the amount of $100,000 ("Promissory Note 2"). In connection with Promissory Note 2, Aquila promised and represented that AFV Partners' carried interest in APG would also be contributed to FSCP Co-Investment I, increasing the value of Ryan's and the other co-founders' Class B Units. Despite Aquila's representations, AFV Partners' carried interest in APG was not contributed to FSCP Co-Investment I and is currently owned by AFV Management. (*Compl.* at ¶63).

These representations by Aquila were part of a continuous and elaborate scheme to use Ryan's knowledge and expertise, as well as the relationships he established with investors, to raise investor funds and generate substantial investment returns for Aquila's own personal benefit. Aquila never intended to pay Ryan the compensation he was promised or award him his equity interests. Aquila's scheme continued even after Ryan's employment began with false promises that he would contribute a portion of his investments to the carried interest vehicle, which he used to induce Ryan to enter into the Promissory Notes, purportedly secured by his carried interest.

The Defendants argue that promises to perform in the future, or so-called promissory fraud, are not actionable. (*Motion* at p. 22).[5] However, Illinois recognizes a clear exception where the plaintiff alleges a scheme to defraud along with an intention not to perform. This is precisely what Plaintiffs have alleged. See *General Electric Credit Auto Lease, Inc. v. Jankuski*, 1988 Ill. App. LEXIS 1717 *7 (1st Dist. December 12, 1988) (court reversed dismissal of promissory fraud claim where Plaintiff alleged a scheme to defraud); *Stamatakis Industries, Inc. v. King*, 165 Ill.App.3d 879, 881 (1st Dist. 1987) (court reversed grant of summary judgment holding that existence of scheme was a question for the trier of fact); *Salisbury v. Chapman Realty*, 124 Ill. App. 3d 1057, 1063, (3d Dist. 1984) (reversed dismissal of promissory fraud claim where promise of future conduct is the scheme or device used to accomplish the fraud). The Defendants also assert that the Promissory Notes' arbitration clauses mandate a dismissal of all claims related to the notes. (*Motion* at p. 18). However, in Counts VII and XIV, Plaintiffs seek a declaration that the notes are wholly invalid, including their arbitration clause, on the grounds that Plaintiffs have alleged a scheme to defraud. There could not have been an agreement between the parties where there was not a meeting of the minds because of the malicious intent of the Defendants. "Fraud in the inducement vitiates the contract and renders the agreement voidable at the option of the injured party." *Grane v. Grane*, 130 Ill. App. 3d 332, 343, 473 N.E.2d 1366, 1373 (2nd Dist. 1985). These arguments equally apply to Plaintiffs' equitable estoppel claims.

---

[5] Defendants concede there are no conflicts between Illinois and Texas substantive law on fraudulent inducement. (*Motion*, at fn 16). They contend that Texas law governs, citing *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002). However, even under Texas law, a promise to do an act in the future is actionable fraud when made with the intention, design, and purpose of deceiving, and with no intention of performing. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434-35 (Tex. 1986). This court, sitting in diversity, should apply Illinois law, given that Defendants have not "established an actual conflict between state laws." *Next Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 U.S. Dist. LEXIS 129374, at *17 (N.D. Ill. July 31, 2018).

Finally, Defendants argue that Ryan expressly disclaimed any reliance on statements made prior to the offer letter, which requires dismissal of Count VIII. (*Motion* at p. 21). First, Plaintiffs relied on numerous misrepresentations by Aquila both in connection with and subsequent to the offer letter. Defendants have failed to identify a single representation alleged by the Plaintiffs that occurred prior to the date of the contract. Secondly, Defendants overlook the fact that parole evidence is admissible to prove fraud in the inducement claims, as the facts and circumstances which induced parties to enter into a contract always go beyond the four corners of the document. *General Electric Credit,* 1988 Ill. App. LEXIS 1717 *13; *Bank of Naperville v. Holz*, 86 Ill.App.3d 533, 538 (2nd Dist. 1980). Nevertheless, this case is in the early pleading stages. The only question before this Court is whether the facts alleged by the Plaintiffs are sufficient to state a claim. As discussed above, the facts alleged in the complaint are more than sufficient to state a claim for fraudulent inducement. These same allegations also support Plaintiffs' equitable estoppel claims in Counts VII and XIV.

## I. Facts Alleged By Tom Aprill Are More Than Sufficient To State Claims For Fraudulent Inducement.

With respect to Count XIII, Tom alleges that Aquila made the following false representations designed to induce Tom to resign from his employment at DHR International and began working for AFV Partners: (1) that Tom would be paid an initial salary of $164,000; (2) Tom would be paid an annual bonus of $155,000; and (3) Tom would receive a carried interest allocation with a value of at least $1.5 million. (*Compl*. at ¶284). Plaintiffs further allege that these representations were false, that Aquila knew they were false when he made them as neither Aquila nor AFV Partners ever intended to pay Tom his salary and bonus, and that Aquila never intended to grant Tom any share of the carried interest. (*Compl*. at ¶285). Tom relied on these representations in deciding to resign from his employment at DHR International and accept

22

employment with AFV Partners. (*Compl*. at ¶287). This was all part of a scheme by Aquila to use Tom's human resource services for Aquila's own personal benefit and for the benefit of his companies. (*Compl*. at ¶286).

Plaintiffs further allege that shortly after starting his employment, Tom was informed by Renato Giger, CFO of AFV Partners, that payment of his salary would be deferred and that he would need to sign a Promissory Note in order to receive any payment from AFV Partners. Renato Giger assured Tom that the loan proceeds would be treated as an advance on his carried interest and that "Tony would take care of [him]." (*Compl*. at ¶297). Tom relied upon these representations in agreeing to execute the Promossory Note. (*Compl*. at ¶300).

These allegations are more than sufficient to state a claim for fraudulent inducement. Finally, any suggestion by the Defendants that Plaintiffs have no damages as they supposedly admit they received payment of compensation after their termination should be rejected. The allegations in the complaint are clear that the payments received by Ryan and Tom after their termination were insufficient to compensate them for their earned salary, earned bonus, and compensate them for the value of their carried interest. (*Compl*. ¶¶136-137; ¶¶260-261).

**J. Aquila Can Be Held Liable In His Individual Capacity.**

Defendants move to Dismiss Counts II, III, V–VIII, and X–XIV, all of which assert claims against Defendant Aquila in his individual capacity. Defendants argue that a plaintiff cannot sustain a claim against a member or manager of a Delaware LLC in his personal capacity unless plaintiffs' allegations establish that the corporation is a "sham entity designed to defraud investors and creditors." *Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Delaware, Inc.*, 75 F. Supp. 3d

883, 896 (N.D. Ill. 2014) (applying Delaware law); Del. Code Ann. tit. 6, § 18-303 (1994). (*Motion* at p. 22). These arguments lack merit and should be rejected for several reasons.[6]

First, the claims against Aquila individually in Counts II and X arise under Section 115/13 of the IWPCA, which places individual liability on responsible parties and states: "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act, shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. As discussed above, Defendants AF Ventures and AFV Partners are deemed to be Illinois employers – because Ryan and Tom reside in Illinois and performed work in Illinois – and are therefore subject to the IWPCA. Additionally, Plaintiffs have alleged that Aquila was the responsible agent in control of AF Ventures and AFV Partners, and that Aquila willfully and deliberately refused to pay Plaintiffs all compensation due to them. (*Compl*. at ¶¶139, 263). As a result, Aquila is deemed an employer and is subject to individual liability under the IWPCA.

Second, the claims in Count III for breach of fiduciary duty are brought directly against Aquila in his individual capacity and arise out of the informal fiduciary relationship alleged between Ryan and Aquila. (*Compl*. at ¶¶32-36, 144-146, 154-155).

Third, the claims against Aquila in Counts VII and XIV (equitable estoppel) and Counts VIII and XIII (fraudulent inducement) all arise out of intentionally false statements and misrepresentations made by Aquila to the Plaintiffs as part of a scheme designed to wrongfully induce them to leave lucrative careers and accept employment with Aquila's investment fund, AFV Partners. Aquila cannot engage in such fraudulent conduct and then hide behind the corporate veil as protection for his misconduct. Courts may ignore the corporate fiction where it is void as a

---

[6] Aquila Family Ventures, LLC ("AF Ventures") is a limited liability company formed under the laws of the State of Texas, not Delaware. (*Compl*. at ¶8; *Stip*. at [*Dkt. No*. 27]). Any arguments by Defendants that Delaware law applies to claims involving AF Ventures should be rejected outright.

cover for fraud or illegality. *Morris v. Mergenthaler*, 1980 Del. Ch. LEXIS 546, at *5 (Del. Ch. October 14, 1980); *Gadsen v. Home Pres. Co*., 2004 Del. Ch. LEXIS 14, at *12 (February 20, 2004) ("a court of equity will disregard the separate legal existence of a corporation where it is shown that the corporate form has been used to perpetrate a fraud or other injustice").

### III.     Defendants' Motion to Strike Should be denied.

Defendants move under Rule 12(f) to strike a number of allegations in the complaint on the basis that they are "irrelevant and scandalous" and unrelated to Plaintiffs' claims. (*Motion* at p. 23). Defendants seek to strike allegations that AFV Partners breached its obligation to provide consulting services, (*Motion* Ex. D, ¶60); that AVF Partners' employees worked on Aquila's personal real estate investments (*Id.* at ¶66); that AFV Partners failed to pay vendors (*Id.* at ¶67); that Aquila failed to make promised investments (*Id.* at ¶¶153, 220(a)); that AFV Partners received a PPP loan (*Id.* at ¶45); that Aquila used investor funds to make repairs to his gulfstream jet (*Id.* at ¶46, 72); and that Aquila engaged in misconduct resulting in his separation from Solera. (*Id.* at ¶¶28, 220). Defendants argue that these allegations are immaterial, have no essential relationship to the claims for relief, and could not form the basis for admissible evidence. (*Motion* at p. 24).

Under Rule 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are strongly disfavored. *See generally Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006) (Easterbrook, J., in chambers). "To prevail on a motion to strike under Rule 12(f), defendants must demonstrate that the material at issue does not bear on the subject matter of the litigation and will prejudice the defendants." *Manuel v. Lucenti*, No. 04-C-2531, 2004 U.S. Dist. LEXIS 23102, at *6 (N.D. Ill. Nov. 10, 2004). A matter should not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation. *VPHI,*

25

*Inc. v. National Educ. Training Group*, 1995 U.S. Dist. LEXIS 1365, *9 (N.D. Ill. January 20, 1995). Prejudice is shown when the challenged pleading confuses the issues or is so lengthy or complex that it places an undue burden on the responding party. *Sun Life Assurance Co. of Can. v. Great Lakes Bus. Credit LLC*, 968 F. Supp. 2d 898, 903 (N.D. Ill. 2013).

Defendants' motion to strike should be denied. Defendants essentially complain about a portion of 10 paragraphs out of 305 paragraphs in the complaint. Any suggestion that these allegations are so lengthy or complex that they create an undue burden on the defendants to respond to is simply baseless. In addition, these allegations are directly relevant to the fact that Aquila held himself out as a wealthy and successful businessman who lured Plaintiffs away from lucrative careers with false promises of executive level compensation, salary, significant bonus payments, and equity interests in various investment vehicles. Despite having the apparent ability to pay the compensation promised, and despite accepting the benefits of the Plaintiffs' services, Defendants wrongfully and intentionally failed to pay Plaintiffs a dime in promised compensation over the course of nearly a year of employment, and in fact compelled Plaintiffs to enter into a series of Promissory Notes purportedly secured by equity interests never awarded to them. Every allegation is directly relevant to Plaintiffs' claims for breach of contract, breach of fiduciary duty, equitable estoppel, and fraudulent inducement.

Finally, to the extent that Defendants believe these allegations do not form the basis for admissible evidence, that determination is governed by the Federal Rules of Evidence and is premature at this point. *Lewis v. Abernathy*, 2016 U.S. Dist. LEXIS 89113 at *4 (N.D. Ind. July 11, 2016).

With respect to Defendants' motion to strike Plaintiffs' claims for reimbursement of attorneys' fees, Counts II and X allege claims under the Illinois Wage Payment and Collection

Act. *See* 820 ILCS 115. Section 115/14 of the Illinois Wage Payment and Collection Act specifically provides for recovery of attorneys' fees. In addition to the above, section 705 ILCS 225/1 provides for recovery of attorney's fees in wage actions brought by employees to recover wages earned and due and owing pursuant to the terms of their employment. Additionally, under Texas law, a person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for services rendered; performed labor or pursuant to an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code § 38.001.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss should be denied in its entirety.

Dated: November 10, 2020     Respectfully submitted,

              **RYAN L. APRILL**
              **THOMAS S. APRILL,**

              By: */s/ Michael K. Desmond*
                One of Their Attorneys

Peter A. Silverman (ARDC No. 6196081)
Michael K. Desmond (ARDC No. 6208809)
Mattison D. Enloe (ARDC No. 6329648)
FIGLIULO & SILVERMAN, P.C.
10 South LaSalle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-4600
psilverman@fslegal.com
mdesmond@fslegal.com
menloe@fslegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2020, a true and correct copy of **PLAINTIFFS' RESPONSE TO MOTION TO DISMISS PURSUANT TO RULE 12(B)(3), 12(B)(6) AND 9(B) AND MOTION TO STRIKE PURSUANT TO 12(F),** was electronically filed and served upon counsel of record below via the Court's CM/ECF System.

*/s/ Michael K. Desmond*

*Attorneys for Defendants*

Brian D. Sieve
Kate Guilfoyle
Lisa Santaniello
Kirkland & Ellis LLP
300 N. LaSalle St.
Chicago, Illinois 60654
brian.sieve@kirkland.com
kate.guilfoyle@kirkland.com
lisa.santaniello@kirkland.com