**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RYAN L. APRILL, an individual, and THOMAS S. APRILL, an individual, | |
| Plaintiffs, | |
| vs. | Case No. 20 CV 04657 |
| ANTHONY AQUILA, AQUILA FAMILY VENTURES, LLC, AFV FOUNDERS SELECT CAPITAL PARTNERS LLC a/k/a AFV PARTNERS LLC, AFV MANAGEMENT ADVISORS LLC, AND AFV FSCP CO-INVESTMENT I LLC a/k/a AFV PARTNERS CO-INVESTMENT I LLC, | Hon. Martha M. Pacold |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Dated: November 20, 2020

Brian D. Sieve, P.C. (Illinois Bar No. 6199741)
Kate Guilfoyle (Illinois Bar No. 6309150)
Lisa Santaniello (Illinois Bar No. 6333299)
(admitted *pro hac vice*)
bsieve@kirkland.com
kate.guilfoyle@kirkland.com
lisa.santaniello@kirland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

**ARGUMENT** ...................................................................................................................1

**I.**      **Ryan's Attempt to Evade His Arbitration Agreement Is Baseless.** ............................1

**II.**      **Plaintiffs' Primary Claims Should be Dismissed Pursuant to Rule 12(b)(6)** ...............4

         A.      Plaintiffs Fail to Allege a Breach of Contract. ......................................................4

         B.      Plaintiffs Do Not Plead an IWPCA Claim. ...........................................................7

         C.      Ryan Has No Claim For Breach of Fiduciary Duty. ...............................................8

**III.**     **All Of Plaintiffs' Alternative Claims Should Be Dismissed.** ........................................9

         A.      Breach of Good Faith & Fair Dealing Is Not An Independent Claim. ..................9

         B.      Plaintiffs Failed to Plead Promissory or Equitable Estoppel. ..............................10

         C.      Plaintiffs Failed to Plead Unjust Enrichment. .....................................................10

         D.      Plaintiffs Failed to Plead Fraudulent Inducement. ...............................................11

                1.      Leaving Former Employers ......................................................................11

                2.      Promissory Notes .....................................................................................12

**IV.**     **Plaintiffs Have No Claims Against Aquila in His Personal Capacity.** .......................13

**V.**      **Should Any of Plaintiffs' Claims Survive, the Court Should Grant Defendants' Motion to Strike.** ......................................................................................14

         A.      The Complaint Includes Scandalous and Impertinent Material. ..........................14

         B.      The Court Should Strike Plaintiffs' Request for Attorneys' Fees. .......................14

**CONCLUSION** ...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alta Mesa Holdings, L.P. v. Ives*,
488 S.W.3d 438 (Tex. Ct. App. 2016) ................................................................................14

*Ault v. C.C. Servs., Inc.*,
597 N.E.2d 720 (Ill. Ct. App. 1992)...................................................................................11

*Baxi v. Ennis Knupp & Assocs., Inc.*,
2011 WL 3898034 (N.D. Ill. Sept. 2, 2011) .........................................................................6

*Bower v. Jones*,
978 F.2d 1004 (7th Cir. 1992) ......................................................................................11, 12

*Brdecka v. Gleaner Life Ins. Soc'y*,
2002 WL 1949743 (N.D. Ill. Aug. 23, 2002) ...............................................................11, 12

*In re Bunzl USA, Inc.*,
155 S.W.3d 202 (Tex. Ct. App. 2004) ..................................................................................3

*Chicago Printing Co. v. Heidelberg USA, Inc.*,
2001 WL 1646567 (N.D. Ill. Dec. 21, 2001).......................................................................14

*City of Midland v. O'Bryant*,
18 S.W.3d 209 (Tex. 2000)..................................................................................................9

*Coe v. BDO Seidman, L.L.P.*,
2015 IL App (1st) .............................................................................................................13

*In re D. Wilson Const. Co.*,
196 S.W.3d 774 (Tex. 2006)................................................................................................1

*DeGeer v. Gillis*,
707 F. Supp. 2d 784 (N.D. Ill. 2010)....................................................................................7

*Dental Health Prods., Inc. v. Ringo*,
2011 WL 3793961 (E.D. Wis. Aug. 25, 2011)......................................................................7

*Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Del., Inc.*,
75 F. Supp. 3d 883 (N.D. Ill. 2014) ...................................................................................13

*Edward Hines Lumber Co. v. Vulcan Materials Co.*,
1985 WL 1189 (N.D. Ill. May 8, 1985)...............................................................................14

*Firstlight Fed. Credit Union v. Loya*,
478 S.W.3d 157 (Tex. Ct. App. 2015) ................................................................2

*Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*,
927 F.2d 988 (7th Cir. 1991) ........................................................................1, 5

*Gregan v. Kelly*,
355 S.W.3d 223 (Tex. Ct. App. 2011) ................................................................8

*Hoffman v. Nationwide Mut. Ins. Co.*,
2011 WL 3158708 (N.D. Ill. July 26, 2011)......................................................12

*Hong v. Havey*,
551 S.W.3d 875 (Tex. Ct. App. 2018) ..............................................................13

*James v. McDonald's Corp.*,
417 F.3d 672 (7th Cir. 2005) ...........................................................................13

*Kamel v. Ave. Inisghts & Analytics LLC*,
2020 WL 4679574 (E.D. Tex. May 5, 2020).......................................................3

*Kamel v. Ave. Insights & Analytics LLC*,
2020 WL 5939052 (E.D. Tex. Oct. 7, 2020) .......................................................3

*Kennedy v. Harber*,
2018 WL 3738091 (Tex. Ct. App. Aug. 7, 2018) ..............................................10

*Kramer v. Melmedica Children's Healthcare*,
1994 WL 722057 (N.D. Ill. Dec. 29, 1994).........................................................6

*Landon v. GTE Comm'ns Servs. Inc.*,
696 F. Supp. 1213 (N.D. Ill. 1988) .....................................................................9

*LaScola v. U.S. Sprint Comm'ns*,
946 F.2d 559 (7th Cir. 1991) ..............................................................................9

*LDF Construction, Inc. v. Texas Friends of Chabad Lubavitch, Inc.*,
459 S.W.3d 720 (Tex. Ct. App. 2015) ................................................................2

*Lee v. Hasson*,
286 S.W.3d 1 (Tex. Ct. App. 2007) ....................................................................9

*Matthews v. ALC Partner, Inc.*,
2008 WL 5188760 (E.D. Mich. Dec. 9, 2008) ..................................................15

*Meyer v. Cathey*,
167 S.W.3d 327 (Tex. 2005).................................................................................9

*Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*,
    323 S.W.3d 151 (Tex. 2010) ............................................................. 3, 4

*Miller v. Miller*,
    700 S.W.2d 941 (Tex. Ct. App. 1985) ................................................. 9

*Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*,
    2018 U.S. Dist. LEXIS 129374 (N.D. Ill. July 31, 2018) ..................... 8

*Norred v. Cotton Patch Café, LLC*,
    2019 WL 5425479 (N.D. Tex. Oct. 22, 2019) .................................. 2, 3

*In re Polymerica, LLC*,
    296 S.W.3d 74 (Tex. 2009) ................................................................ 2

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ......................................................................... 13

*Provision Grp., Inc. v. Crown Toxicology, Ltd.*,
    2017 WL 11221433 (W.D. Tex. Oct. 19, 2017) .............................. 5, 6

*Ragan v. BP Prods. N. Am.*,
    2020 WL 127954 (N.D. Ill. Jan. 10, 2020) ........................................ 8

*Runnemede Owners, Inc. v. Crest Mortg. Corp.*,
    861 F.2d 1053 (7th Cir. 1988) ........................................................... 6

*Runnemede Owners, Inc. v. Crest Mortg. Corp.*,
    1987 WL 9594 (N.D. Ill. Apr. 16, 1987) ........................................... 6

*Saletech, LLC v. East Balt, Inc.*,
    2014 IL App (1st), 132639 ............................................................... 10

*Sanchez v. Haltz Const., Inc.*,
    2012 WL 13514 (N.D. Ill. Jan. 4, 2012) .......................................... 15

*SK Plymouth, LLC v. Simmons*,
    605 S.W.3d 706 (Tex. Ct. App. 2020) ............................................... 3

*Skeels v. Suder*,
    2020 WL 5666555 (Tex. Ct. App. Sept. 24, 2020) .......................... 10

*Stover v. I2 Techs, Inc.*,
    2003 WL 21673525 (N.D. Tex. July 15, 2003) .................................. 5

*Synergy Strategic Sols.,LLC v. Totus Sols., Inc.*,
    2019 WL 1406599 (N.D. Tex. Mar. 28, 2019) ................................. 13

*Taraldsen v. Dodeka, L.L.C.*,
   2011 WL 2653274 (Tex. Ct. App. Jan. 20, 2011)...............................................2

*Toulon v. Cont'l Cas. Co.*,
   877 F.3d 725 (7th Cir. 2017) ...........................................................................10

*Tuck v. Miller*,
   483 S.W.2d 898 (Tex. Ct. App. 1972) ...............................................................9

*Wartsila v. Duke Capital LLC*,
   2007 WL 2274403 (S.D. Tex. Aug. 8, 2007) .....................................................5

*Watts v. ADDO Mgmt., LLC*,
   2018 IL App (1st) 170201 ...................................................................................7

*Willis v. Donnelly*,
   199 S.W.3d 262 (Tex. 2006)...............................................................................9

*Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*,
   313 F.3d 385 (7th Cir. 2002) ...........................................................................14

*Zeidler v. A&W Rests., Inc.*,
   301 F.3d 572 (7th Cir. 2002) .............................................................................9

**Statutes**

705 ILCS 225/1...................................................................................................15

Federal Arbitration Act ........................................................................................1

TEX. BUS. ORGS. CODE ANN. § 21.223(B) ..............................................................13

TEX. CIV. PRAC. REM. CODE ANN. § 38.001 (WEST 2019) ........................................14

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................11, 13

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 4, 7

**Other Authorities**

56 Ill Adm. Code § 300.440(c) (2014)...................................................................7

56 Ill. Adm. Code § 300.500 (2014) ......................................................................7

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss ("Response") confirms their strategy in this case: smear Anthony Aquila with irrelevant allegations, portray themselves as victims, assert as many claims as possible (fourteen in all), and hope that at least one of them survives the motion to dismiss. But a careful review of the factual allegations in the Complaint and incorporated documents requires that this case be dismissed in its entirety. All of Ryan's claims must be arbitrated because the contract *he alleges* governs his relationship with Defendants includes an arbitration provision. He cannot seek to enforce some of the terms in that contract and ignore others. As for the Rule 12(b)(6) motion, Plaintiffs' own allegations and incorporated documents establish they have no claim for alleged unpaid salary, annual bonus, or carried interest as a matter of law. While Plaintiffs argue that Defendants have "completely ignored significant allegations of fact," the opposite is true. (Resp. at 8.) It is Plaintiffs who ignore their own pleaded facts and instead rely on legal conclusions. But legal conclusions cannot save their claims, particularly when they are contradicted by the Offer Letter and other documents incorporated in the Complaint. *See Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991). Simply put, Plaintiffs' failure to allege facts supporting their claims requires that this Court dismiss them with prejudice.

## ARGUMENT

### I. Ryan's Attempt to Evade His Arbitration Agreement Is Baseless.

Ryan does not dispute that the agreement *he alleges* governs the parties' relationship ("Offer Letter") includes an Arbitration Agreement. Instead, he asserts he should not be bound by that provision (and apparently only that provision) because the Arbitration Agreement was not signed by the parties. He is wrong. The Supreme Court of Texas[1] has held that the Federal

---

[1] "When deciding whether the parties agreed to arbitrate under the FAA, courts should apply ordinary state law principles regarding the formation of contracts." *In re D. Wilson Const. Co.*, 196 S.W.3d 774,

Arbitration Act does not require parties to sign an arbitration agreement "so long as [the agreement is in writing] and agreed to by the parties." *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009). Here, there is no dispute the Arbitration Agreement was in writing, Motion to Dismiss, Ex. C, and there can be no serious dispute that Ryan agreed to it, for at least two reasons.

*First*, the Arbitration Agreement was explicitly referred to—and thus incorporated—in the Offer Letter. The Offer Letter provided: "[The parties] shall execute the arbitration agreement set forth in Exhibit B." (Mot. to Dismiss Ex. B. ¶ 7.) Texas contract law "allows a document . . . to be incorporated into a contract," even if the incorporated document is unsigned. *Norred v. Cotton Patch Café, LLC*, 2019 WL 5425479, at *4 (N.D. Tex. Oct. 22, 2019) (internal quotation marks and citation omitted). As the court in *LDF Construction, Inc. v. Texas Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 728 (Tex. Ct. App. 2015) explained: "A valid agreement to arbitrate exists when a signed contract incorporates by reference another document containing the arbitration clause. This rule applies even when the document containing the arbitration agreement is unsigned."[2]

*Second*, "in the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract." *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 168 (Tex. Ct. App. 2015). "Manifestations of intent through actions and words may demonstrate delivery of a contract and enable its enforcement." *Taraldsen,* 2011 WL 2653274, at

---

781 (Tex. 2006). The parties agree that the Offer Letter is governed by Texas law. (*See* Mot. to Dismiss at n.7 and Ex. B ¶ 11; Resp. at n.2.)

[2] The fact that the Offer Letter itself is not signed is of no moment. Ryan alleges that he agreed to the Offer Letter, and the Offer Letter was the operative contract. (Compl. ¶ 38.) "Texas law [] recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent. Manifestations of intent through actions and words may demonstrate delivery of a contract and enable its enforcement." *Taraldsen v. Dodeka, L.L.C.*, 2011 WL 2653274, at *2 (Tex. Ct. App. Jan. 20, 2011) (internal quotation marks and citation omitted).

*2.[3] Ryan thus assented to the Arbitration Agreement with the same actions and words **he** contends manifested his assent to the Offer Letter. Ryan alleges that he and CFO Lori McCutcheon emailed the Offer Letter back and forth. (Compl. ¶ 37.) There is no dispute that the Arbitration Agreement was part of that package of documents that was exchanged. (*See* Mot. to Dismiss Exs. A–C.) Ryan made edits to the Offer Letter and sent it back to McCutcheon, **along with the Arbitration Agreement**, stating "I think **these documents** work well . . ." (Compl. ¶ 37–38; Mot. to Dismiss Exs. A–C (emphasis added).) Ryan specifically alleges he accepted the Offer Letter. (Compl. ¶ 37–38.) "Under Texas law, when 'agreements [are] executed at the same time, with the same purpose, and as part of the same transaction, [they] are construed together." *Norred*, 2019 WL 5425479, at *5.

"Texas Courts have held that **explicit** language is necessary to show that the parties intend to require a signature." *Kamel*, 2020 WL 4679574, at *5 (E.D. Tex. May 5, 2020) (emphasis added). A signature block does not establish that the parties intended to require a signature, nor does language suggesting that by signing the party is "acknowledging" the terms of the agreement. *See, e.g.*, *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 715–17 (Tex. Ct. App. 2020).[4] And the Offer Letter's language that "[the parties] shall execute the arbitration agreement set forth in Exhibit B" (Mot. to Dismiss Ex. B ¶ 7) does not support Ryan's argument either. The Texas Supreme Court has held that "Texas law recognizes that a contract need not be signed to be 'executed.'" *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex.

---

[3]    A court can decide intent as a matter of law. *Kamel v. Ave. Inisghts & Analytics LLC*, 2020 WL 4679574, at *4 (E.D. Tex. May 5, 2020), report and recommendation adopted sub nom, 2020 WL 5939052 (E.D. Tex. Oct. 7, 2020).

[4]    In contrast, in *In re Bunzl USA, Inc.*, cited by Plaintiffs, the appellate court pointed to language in the contract **explicitly requiring the parties to sign** any amendments or modifications to conclude that the trial court did not abuse its discretion by finding that the contract at issue explicitly required that the parties sign the contract. 155 S.W.3d 202, 211–12 (Tex. Ct. App. 2004).

2010). Rather, "the term 'execute' means 'to finish' or 'make complete." *Id.* That is, "[i]f a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract." *Id.* This is true for the Arbitration Agreement, and Plaintiffs do not validly suggest otherwise.[5]

## II.     Plaintiffs' Primary Claims Should be Dismissed Pursuant to Rule 12(b)(6).

### A.     Plaintiffs Fail to Allege a Breach of Contract.

Plaintiffs' Response utterly fails to address that their own allegations—that Ryan and Tom worked less than ten months and six months, respectively, and were paid $190,000 and $55,786 after tax, respectively—refute their breach claims regarding failure to pay salary. (Compl. ¶¶ 81, 101)

Ryan concedes that the Offer Letter provides only for a discretionary, contingent, and not presently-granted carried interest and "annual bonus opportunity." (Mot. to Dismiss Ex. B ¶ 1; Resp. at 11.) Recognizing that those facts doom his claim, Ryan relies on his allegation that he and Aquila later discussed benchmarking future compensation off of a hypothetical fund size. (*Id.* (citing Compl. ¶ 56).)[6] But this allegation adds nothing: it does not plead facts regarding any agreement on the ***timing*** of any grant, contribution, or vesting of carried interest, or the ***amount*** of any contribution (as opposed to hypothetical benchmarking of value off of a fund size that was

---

[5]  Ryan's argument that Defendants waived the arbitration provision, Response at 7, is also baseless. The arbitration provision was not ripe until Ryan filed this lawsuit, rather than initiating arbitration. As soon as he did so, Defendants moved to enforce the arbitration provision.

[6]  Plaintiffs also argue that they alleged "as proof of Aquila's determinations, those figures are reflected in AFV's budgets" (Resp. at 11 (citing Compl. ¶ 57).) The Complaint alleges nothing of the sort. And even if Ryan had made such an allegation, it would be irrelevant. A conclusory allegation that a company created projections or long-term planning documents that included future compensation projections does nothing to establish that the compensation was promised, presently-granted, or not contingent.

never realized).[7] *See, e.g.*, *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, 2017 WL 11221433, at *3–4 (W.D. Tex. Oct. 19, 2017) (plaintiff must plead "material terms of a contract . . . to enable a court to understand the parties' obligations thereunder" including "timeframe" for performance and "terms and scope" of payment of alleged entitlement). Any conclusory suggestion otherwise is belied by the draft documents Plaintiffs incorporated in their Complaint. (*See* Mot. to Dismiss at 3–4; *see also Stover v. I2 Techs, Inc.*, 2003 WL 21673525, at *3 (N.D. Tex. July 15, 2003) (dismissing claim where "the express terms of the Notices preclude any assertion by Plaintiff that the options were . . . guaranteed at their time of issue. Plaintiff has no claim for any options which had not vested . . . prior to his termination").)

This allegation also confirms that any alleged future right to carried interest was contingent on CEO discretion and events that did not occur. Ryan alleges that the benchmarking was "subject to" future performance, and it tied future compensation to a hypothetical fund size that Ryan's own allegations establish was not met during Ryan's less than ten months of employment. (Compl. ¶¶ 56, 112.) This is consistent with Plaintiffs' other allegations and incorporated documents, which establish AFV Partners was in its infancy and did not receive binding capital commitments from investors at any time during Ryan's employment. (*See* Mot. to Dismiss at 4.) In Texas (and Illinois), "[s]atisfaction [] of a condition precedent to Defendant's duty to perform is an essential element of a claim for breach of contract." *Wartsila v. Duke Capital LLC*, 2007 WL 2274403, at *4 (S.D. Tex. Aug. 8, 2007). Where "it is clear on the face of the pleadings that [a] condition

---

[7]    This allegation also does not establish that any "annual bonus" was presently granted or guaranteed, as opposed to contingent on an "annual performance review" and "AFV's discretion," as provided in the Offer Letter. (Mot. to Dismiss at 8 (quoting Mot. to Dismiss Ex. B ¶ 2).) Indeed, this is the only interpretation that makes sense—the allegation suggests Aquila and Ryan discussed an "***annual*** bonus" during Ryan's ***third*** month of employment. (Compl. ¶ 56.) *See, e.g.*, *Graue Mill Dev. Corp.*, 927 F.2d at 991 ("Where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly contrasted, must prevail.").

precedent was not satisfied," dismissal is warranted. *Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 1987 WL 9594, at *2 (N.D. Ill. Apr. 16, 1987), *aff'd* 861 F.2d 1053 (7th Cir. 1988).

As for Tom's claim regarding carried interest and bonus, he points to his allegation that "Aquila offered Tom . . . an annual bonus of $155,000 . . . and a carried interest allocation with a value of approximately $1.5 million subject to . . . investment performance." (Resp. at 11 (citing Compl. ¶¶ 93, 237).) But this conclusory allegation does nothing to address the fact that Tom must do more than merely state that a contract for a purported entitlement existed; he must allege a sufficient factual basis to raise the right to relief above a speculative level. *See, e.g., Baxi v. Ennis Knupp & Assocs., Inc.*, 2011 WL 3898034, at *8 (N.D. Ill. Sept. 2, 2011).[8] "[W]hen the material terms and conditions" of an alleged oral employment contract "are not ascertainable . . . [t]he court will not supply missing essential terms to an alleged contract"; instead, dismissal is proper. *Id.* (internal quotation marks and citation omitted). Because Tom has pleaded no facts to support any alleged oral promise of carried interest or annual bonus, his breach of contract claim should be dismissed. (*See* Mot. to Dismiss at 13–14; *see also Kramer v. Melmedica Children's Healthcare, Inc.*, 1994 WL 722057, at *4 (N.D. Ill. Dec. 29, 1994) (dismissing claim because plaintiff's allegations of "oral promise of a future interest in a corporation is devoid of the necessary specificity").)

---

[8] Tom applies Texas contract law to his breach of contract claim, without justification or support. (Resp. at n.2.) As Defendants explained, Illinois law applies to Tom's breach of contract claim, although the substantive law of Texas is not materially different. *See* Mot. to Dismiss at 13–14 and n.7. If, however, Tom is claiming that his employment was governed by the terms of the Offer Letter, then his claims should be dismissed in favor of arbitration, just like Ryan's. And Tom does not state a breach claim under Texas law either for the same reasons discussed above. *See, e.g., Provision Grp.*, 2017 WL 11221433, at *3–4.

### B.     Plaintiffs Do Not Plead an IWPCA Claim.

Plaintiffs' efforts to salvage their IWPCA claims turn on a 2014 case and regulations addressing an ambiguity as to whether *employees* had to perform work within the state in order to *enforce* the Act. (Resp. at 13 (citing *Watts v. ADDO Mgmt., LLC*, 2018 IL App (1st) 170201).) In contrast, Defendants explained that they are not *Illinois employers*, and as such they are not subject to the Act. (Mot. to Dismiss at 11.) Indeed, the 2014 regulations Plaintiff cite support Defendants' position, because they confirm that to be an Illinois employer under the statute, the defendant must have "sufficient contacts in the State, such as performing substantial business in the State, maintaining a principal place of business in the State, marketing its services in the State or maintaining a registered agent within the State." *Watts* ¶ 20 (quoting 56 Ill Adm. Code § 300.440(c) (2014)). Plaintiffs do not allege any of these for any Defendant, nor could they. The fact that Plaintiffs worked in Illinois does not cure this pleading deficiency, as the regulations make clear. *Id.*[9]

Plaintiffs' IWPCA claims fail for the separate reason that the alleged carried interest and discretionary, annual bonus opportunity were not "earned," as required by the IWPCA. (*See* Mot. to Dismiss at 12; *see also* 56 Ill. Adm. Code § 300.500 (2014) (differentiating "earned bonuses" payable under the Act and "discretionary or gratuitous bonuses" which are not).)[10] As the case

---

[9]     Plaintiffs' assertion that this is a fact issue inappropriate for Rule 12(b)(6) dismissal is belied by their own citations. *See Watts*, 2018 IL App (1st) 170201. And Plaintiffs do not address the cases cited by Defendants dismissing IWPCA claims where plaintiff failed to plead facts establishing defendant was an Illinois employer. *See, e.g., DeGeer v. Gillis*, 707 F. Supp. 2d 784, 800 (N.D. Ill. 2010) (dismissing IWCPA claim because "[a]ccording to DeGeer's own complaint, none of the defendants is a citizen of Illinois"); *see also Dental Health Prods., Inc. v. Ringo*, 2011 WL 3793961, at *4 (E.D. Wis. Aug. 25, 2011) (dismissing IWPCA claim against corporation incorporated and with principal place of business in Wisconsin).

[10]    Nor do Plaintiffs provide any explanation or point to any allegations establishing that carried interest is encompassed by the Act's protection of "earned wages." (*See* Mot. to Dismiss at 12.)

Plaintiffs cite confirms, an employee has a right to compensation under the Act "when there is an unequivocal promise by the employer"; "the employee has performed the requirements set forth" in the agreement between the parties; and "all of the required conditions" for receiving the compensation "have been met." (Resp. at 14 (*quoting Ragan v. BP Prods. N. Am.*, 2020 WL 127954 (N.D. Ill. Jan. 10, 2020).) As explained above, Plaintiffs' own allegations show that the carried interest and discretionary annual bonus were ***not*** earned, as required by the statute.

### C.    Ryan Has No Claim For Breach of Fiduciary Duty.

Ryan concedes Aquila owes him no fiduciary duty stemming from a contract or from the employer-employee relationship. (Resp. at 14; *see* Mot. to Dismiss at 12–13.) With those paths foreclosed, Ryan insists he pleads an informal fiduciary duty arising from the allegation that Aquila recruited him. (Resp. at 14.) He is wrong on this issue too.

"[A] fiduciary relationship is an extraordinary one and will not be lightly created." *Gregan v. Kelly*, 355 S.W.3d 223, 228 (Tex. Ct. App. 2011).[11] "The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. . . . Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship." *Id.* (internal quotation marks and citation omitted). Accordingly, "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the

---

[11]    Ryan claims the alleged fiduciary duty "arises under Texas law." (Resp. at 14.) As Defendants explained in their Motion to Dismiss, Texas and Illinois fiduciary duty law are substantively the same. (Mot. to Dismiss at 12–13.) Thus, under Plaintiffs' own reasoning, this Court should apply Illinois law. (*See* Resp. at 21 n.5 (contending the Court should apply Illinois law where the parties have not "established an actual conflict between state laws.") (quoting *Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 2018 U.S. Dist. LEXIS 129374, at *17 (N.D. Ill. July 31, 2018).)) In any event, Plaintiffs have not pled an informal fiduciary duty under either state's law, as Defendants made clear in their Motion to Dismiss. (Mot. to Dismiss at 12–13.)

basis of the suit." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).[12] No such allegations exist here. Ryan's claim, which includes the purported recruitment efforts, is based solely on the employment context. (*See, e.g.*, Compl. ¶ 30.) Ryan does not cite to, and Defendants are not aware of, any cases holding that recruiting employees creates an informal fiduciary duty.

## III. All Of Plaintiffs' Alternative Claims Should Be Dismissed.

### A. Breach of Good Faith & Fair Dealing Is Not An Independent Claim.

The Seventh Circuit case cited by Plaintiffs explicitly states that there is no "independent cause of action" for breach of good faith and fair dealing. *LaScola v. U.S. Sprint Comm'ns*, 946 F.2d 559, 565 (7th Cir. 1991); *see also Zeidler v. A&W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("The covenant [of good faith and fair dealing] is only an aid to interpretation, not a source of contractual duties or liability under Illinois law."). And in any event, Texas law applies to this claim. *Landon v. GTE Comm'ns Servs. Inc.*, 696 F. Supp. 1213, 1219 (N.D. Ill. 1988) ("[T]he claim of breach of covenant of good faith and fair dealing[] is essentially a breach of contract claim which, under Illinois law, is governed by the law of the forum provided in the contract."). The Texas Supreme Court has expressly held that it is not an independent claim, and that even within a contract claim, "there is no duty of good faith and fair dealing in the employment context." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000).

---

[12] The cases Ryan cites further confirm the high standard for an informal duty. *See Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. Ct. App. 2007) (finding informal fiduciary duty stemming from "close personal family relationship well beyond casual friendship" that preceded business agreement by approximately six years); *Willis v. Donnelly,* 199 S.W.3d 262, 277 (Tex. 2006) (holding no fiduciary relationship between business associates because relationship did not exist independent of the agreement that formed the basis of the suit and there was no evidence the parties "developed a close personal relationship of trust and confidence that could give rise to a fiduciary relationship"); *Miller v. Miller*, 700 S.W.2d 941, 945-46 (Tex. Ct. App. 1985) (finding informal fiduciary duty arising from special relationship of trust between the parties because of their marriage); *Tuck v. Miller*, 483 S.W.2d 898, 905 (Tex. Ct. App. 1972) (finding informal fiduciary duty arising from fifteen-year long personal relationship; friendship separate from business agreement).

### B. Plaintiffs Failed to Plead Promissory or Equitable Estoppel.

To support their promissory estoppel claims, Plaintiffs simply insist, without citing any allegations or making any meaningful argument, that "the parties mutually agreed to the compensation." This, they claim, is sufficient to state a cause of action. (Resp. at 18.) Plaintiffs do even less for their equitable estoppel claims, asserting only that "[t]hese same allegations also support Plaintiffs' equitable estoppel claims." *Id*. at 22. Plaintiffs have failed to address any of the arguments discussed at length in Defendants' Motion to Dismiss. Plaintiffs' failure to address these arguments or to identify relevant well-pleaded facts requires that the claims be dismissed.

### C. Plaintiffs Failed to Plead Unjust Enrichment.

As Defendants explained in their Motion to Dismiss, many courts in Texas and Illinois hold that there is no separate cause of action for unjust enrichment. (Mot. to Dismiss at 19.) Plaintiffs suggest that "more recent" Texas case law holds to the contrary, citing a 2010 case. (Resp. at 16.) But they neglect newer case law holding that no independent cause of action for unjust enrichment exists. *See Skeels v. Suder*, 2020 WL 5666555, at *13 n.22 (Tex. Ct. App. Sept. 24, 2020) ("[U]njust enrichment is not an independent cause of action."); *Kennedy v. Harber*, 2018 WL 3738091, at *4 (Tex. Ct. App. Aug. 7, 2018) (same). This is also the case in Illinois. *See, e.g.*, *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) ("Unjust enrichment does not constitute an independent cause of action.") (*quoting Saletech, LLC v. East Balt, Inc*., 2014 IL App (1st), 132639, ¶ 36).

And as Defendants explained in their Motion to Dismiss, Plaintiffs failed to state a claim for unjust enrichment in any case. (Mot. to Dismiss at 19.) Plaintiffs' conclusory arguments ignore the fact that Plaintiffs' own allegations establish they were paid salary, and they do not allege any facts suggesting that those payments did not compensate for Plaintiffs' alleged services. *Id*.

## D.    Plaintiffs Failed to Plead Fraudulent Inducement.

Plaintiffs admit that under Illinois law, allegations of promises to perform an act in the future cannot form the basis of a fraudulent inducement claim. (Resp. at 18; *see* Mot. to Dismiss at 20.) So Plaintiffs now contend they have alleged a "scheme to defraud"—an exception to the rule barring fraudulent inducement based on promises to perform in the future.  (Resp. at 18; *see, e.g., Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992).) To allege such a scheme:

> [A] claimant must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed.

*Id.* at 1012.  Such allegations must be pleaded with particularity under Federal Rule 9(b). *Brdecka v. Gleaner Life Ins. Soc'y*, 2002 WL 1949743, at *4 (N.D. Ill. Aug. 23, 2002). Here, Plaintiffs do not point to any well-pleaded facts alleging such a scheme (which is implausible on its face).

### 1.    Leaving Former Employers

Plaintiffs point only to allegations that the alleged representations regarding compensation "were false, that Aquila knew they were false when he made them" and that he never "intended to pay [Plaintiffs] salary and bonus [or] . . . carried interest" as "part of a scheme by Aquila . . ." (Resp. at 18–19, 22–23 (citing Compl. ¶¶ 220–22, 284–85).) These conclusions are devoid of well-pleaded facts suggesting any "specific, objective manifestations of fraudulent intent—a scheme or device." *Bower*, 978 F.2d at 1012. They are not "the kind of specific factual allegations that would support an inference that the defendant had participated in a scheme to defraud" Plaintiffs. *Ault v. C.C. Servs., Inc.*, 597 N.E.2d 720, 723 (Ill. Ct. App. 1992). "Mere assertions that the defendant had no intention of keeping its promise are insufficient." *Brdecka v. Gleander Life Ins. Soc'y*, 2002 WL 1949743, at *3 (N.D. Ill. Aug. 23, 2002).

Plaintiffs also rely on the allegation that "Aquila represented… [to] Ryan [that he] would be hired as a Principal, with a starting annual salary of $250,000 plus bonus . . . and a percentage in the firms' carried interest in its investments." (Resp. at 18–19 (citing Compl. ¶ 220).) But as discussed at length in Defendants' Motion to Dismiss, any conclusory allegation that Aquila made false promises to pay are contradicted by the facts pleaded in the Complaint, the documents incorporated therein, and the Offer Letter. These establish that salary was paid, and annual bonus and carried interest were discretionary, contingent, and not presently granted. (Mot. to Dismiss at 20–21.)[13]

### 2. *Promissory Notes*

Though far from clear, Plaintiffs appear to argue they alleged a second scheme to defraud based on Plaintiffs executing promissory notes. (Resp. at 19–21.) But their Complaint fails to plead facts supporting any such scheme, for the reasons outlined above and in Defendants' Motion to Dismiss. (*See* Mot. to Dismiss at 18.) In addition, any claim regarding the promissory notes must be dismissed in favor of arbitration because the notes contain an arbitration clause. (Mot. to Dismiss at 18; Compl. Ex. 3 ¶ 10.) Plaintiffs argue that their fraud claim renders the notes voidable in their entirety, including the arbitration provision, Response at 21, but that argument is flatly incorrect. Courts, including the Seventh Circuit and the Supreme Court, consistently hold that an

---

[13] Allegations about benchmarking to a hypothetical fund size, Response at 20 (*citing* Compl. ¶ 56), also fail to allege a scheme to defraud. (Mot. to Dismiss at 21; *see Hoffman v. Nationwide Mut. Ins. Co.*, 2011 WL 3158708, at *7 (N.D. Ill. July 26, 2011) ("[S]tatements concerning projected earnings and future promises rather than representations of past or existing facts" are not actionable fraud.)) Allegations that Aquila represented that he left Solera Group voluntarily and that he would invest $100 million of his own funds to start AFV Partners fare no better. (Resp. at 18–19; Compl. ¶ 220 a-b) Plaintiffs fail to allege a specific fraudulent statement, in addition to failing to allege the "when [or] where, and how" of any such statements. *Brdecka*, 2002 WL 1949743, at *4. Nor do these allegations plead anything suggesting "specific, objective manifestations of fraudulent intent" to engage in a scheme to avoid payment of any promised compensation. *Bower*, 978 F.2d at 1012. And as discussed in the Motion to Dismiss, Ryan disclaimed any statements prior to the Offer Letter when he executed the Offer Letter. (Mot. to Dismiss at 21 and n.15.)

arbitration clause in a contract must be given effect even if a plaintiff claims she was fraudulently induced to enter into the contract containing the arbitration provision. "[A] court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud." *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005).[14]

## IV. Plaintiffs Have No Claims Against Aquila in His Personal Capacity.

Plaintiffs agree on the applicable standard for piercing the corporate veil: whether the corporation is a "sham entity designed to defraud investors and creditors" and has no "independent significance as a corporate entity," but instead "exists as a vehicle for fraud." *Eagle Air Transp., Inc. v. Nat'l Aerotech Aviation Del., Inc.*, 75 F. Supp. 3d 883, 896-97 (N.D. Ill. 2014); *see* Resp. at 24–25.[15] Plaintiffs do not point to any facts in the Complaint suggesting that the LLC Defendants were shams—because there are none. (Resp. at 24–25.) To the contrary, Plaintiffs' allegations

---

[14]   *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Coe v. BDO Seidman, L.L.P.*, 2015 IL App (1st), 142215, ¶ 18 (affirming stay pending arbitration based on arbitration agreement in contract despite Plaintiffs' claims of fraud in the inducement where they challenged "the validity of the contract as a whole, and not specifically . . . the arbitration clause") (internal quotation marks and citation omitted).

[15]   It is unclear if Plaintiffs are attempting to state a veil piercing claim against AF Ventures under Texas law. Both Ryan and Tom allege they were employees of AFV Partners (incorporated in Delaware), not AF Ventures. (Compl. ¶¶ 163, 164, 239.) And Tom does not even bring any claims against AF Ventures. In any event, under Texas law, piercing the veil requires allegations that the individual "caused the corporation to be used for the purpose of perpetrating and did perpetrate ***an actual fraud*** on the obligee primarily for [his] direct personal benefit." TEX. BUS. ORGS. CODE ANN. § 21.223(B) (WEST) (emphasis added). The statute requires a showing that the fraud was perpetrated for defendant's "direct personal benefit" where "funds derived from the corporation's allegedly fraudulent conduct were pocketed by or diverted to the individual defendant." *Hong v. Havey*, 551 S.W.3d 875, 885 (Tex. Ct. App. 2018). No such facts are alleged here. Finally, and as is also the case for claims under the Delaware standard, where the underlying claim is one of fraud (see Counts VIII and XIII), these facts must be pleaded with Rule 9(b) specificity. *See Synergy Strategic Sols. ,LLC v. Totus Sols., Inc.*, 2019 WL 1406599, at *7 (N.D. Tex. Mar. 28, 2019); *Eagle Air*, 75 F. Supp.3d at 896 n.8. Thus, Plaintiffs have failed to sufficiently plead facts justifying piercing the corporate veil under Texas law as well as Delaware law.

*support* the conclusion that the LLC defendants were created for legitimate business purposes. As such, Plaintiffs' common law claims against Aquila should be dismissed.

**V.      Should Any of Plaintiffs' Claims Survive, the Court Should Grant Defendants' Motion to Strike.**

**A.      The Complaint Includes Scandalous and Impertinent Material.**

Allegations that have "no essential or important relationship to the claim[s] for relief" should be stricken. *Chicago Printing Co. v. Heidelberg USA, Inc.*, 2001 WL 1646567, at *1 (N.D. Ill. Dec. 21, 2001). Plaintiffs do not even attempt to explain how—for example—receipt of PPP loans or AF Ventures' employees work on real estate investments has any relevance to their claims. (Resp. at 26.) Instead, they suggest the motion to strike should be denied because the allegations are not "so lengthy or complex that they create an undue burden on the defendants to respond." (Resp. at 26.) That argument misses the point entirely. Such allegations have the potential to defame Aquila and harm his businesses. Neither the Court nor Defendants should have to waste time reviewing and responding to allegations that are irrelevant on their face and are prejudicial.

**B.      The Court Should Strike Plaintiffs' Request for Attorneys' Fees.**

Plaintiffs apparently concede they are not entitled to attorneys' fees "absent a statute or contractual agreement" providing for such fees. *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 1985 WL 1189, at *2 (N.D. Ill. May 8, 1985). Plaintiffs are not eligible for attorneys' fees under TEX. CIV. PRAC. REM. CODE ANN. § 38.001 (WEST 2019) because availability of attorneys' fees is a procedural, not a substantive, issue, and Illinois law governs. *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 388 (7th Cir. 2002).[16]

---

[16]      And even if this statute did apply, Plaintiffs could not recover attorneys' fees because the statute does not provide for recovery against an LLC. *See, e.g.*, *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. Ct. App. 2016) (holding an LLC is not a "corporation" for purposes of § 38.001).

Plaintiffs do not state a claim for fees under Illinois statute 705 ILCS 225/1, for two reasons. *First*, the statute provides for attorneys' fees only where wages are earned, due and owing. Plaintiffs admit they were paid salary on June 19, 2020, and as explained above, annual bonuses and carried interest were not earned, due, or owing. (Compl. ¶¶ 81, 101.) *Second*, this statute is strictly construed to require "a demand [be] made in writing at least 3 days before the action [is] brought, for a sum not exceeding the amount so found due and owing." 705 ILCS 225/1. If a demand is not made, specifying the precise outstanding sum and not exceeding that amount, plaintiffs are ineligible for attorneys' fees under the statute. *Sanchez v. Haltz Const., Inc.*, 2012 WL 13514, at *5 (N.D. Ill. Jan. 4, 2012) (plaintiffs' 705 ILCS 225/1 claim deemed withdrawn where they admitted they failed to make required demand).[17] Plaintiffs have not alleged that they complied with this requirement.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted, with prejudice.

Dated: November 20, 2020

Respectfully submitted,

/s/ *Kate Guilfoyle*
Brian D. Sieve, P.C. (Illinois Bar No. 6199741)
Kate Guilfoyle (Illinois Bar No. 6309150)
Lisa Santaniello (Illinois Bar No. 6333299)
(admitted *pro hac vice*)
bsieve@kirland.com
kate.guilfoyle@kirkland.com
lisa.santaniello@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200
*Attorneys for Defendants*

---

[17] *See also Matthews v. ALC Partner, Inc.*, 2008 WL 5188760, at *13 (E.D. Mich. Dec. 9, 2008) (failure to plead that a 705 ILCS 225/1 demand had been made doomed claim for attorneys' fees under that statute).

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020, a true and correct copy of the foregoing document, **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**, was electronically filed and served upon counsel of record via the Court's CM/ECF System.


*/s/ Kate Guilfoyle*
Kate Guilfoyle